CHARLESTON URBAN RENEWAL AUTHORITY
*and* THE CITY OF CHARLESTON

*v.*

POOLE ASSOCIATES, INC.

(No. 13042)

Submitted October 10, 1972.    Decided January 16, 1973.

Rehearing Denied April 3, 1973.

*Lively & Light, William T. Lively, Jr.,* for appellant.

*Paul N. Bowles, W. Warren Upton,* for appellees.

CAPLAN, JUDGE:

This is an appeal from a judgment of the Circuit Court of Kanawha County in an action wherein the plaintiff, Charleston Urban Renewal Authority, sometimes hereinafter called CURA, sought an injunction requiring the defendant, Poole Associates, Inc., to remove its Holiday Inn sign from its property located at 600 Kanawha Boulevard, East, in the City of Charleston. After a motion to dismiss the complaint was filed by the defendant, an amended complaint was filed in which the City of Charleston was joined as a party plaintiff. In this complaint the plaintiffs also sought an injunction compelling the removal of the aforesaid Holiday Inn sign. The defendant filed its answer to the amended complaint alleging ten separate defenses. Several separate stipulations which included exhibits were filed by the parties. No other evidence was taken and the case

was submitted to the court for its decision on the pleadings and stipulations.

By order dated June 18, 1970 the court ruled in favor of the plaintiffs and ordered that the defendant be enjoined from further maintaining the Holiday Inn sign and further that it cause said sign to be removed. Upon the refusal of the court to grant its motion to set aside the judgment and grant it a new trial, the defendant prosecutes this appeal.

The Charleston Urban Renewal Authority is a public corporate body created under the provisions of Code, 1931, 16-18-4, as amended, and, as provided by that section, has been authorized by the City Council of the City of Charleston to exercise its statutory powers. Involved in this proceeding is CURA's "Urban Renewal Plan Summers Street-Boulevard Project, West Virginia R-3, November 7, 1960", which plan was adopted by resolution of the city council on February 6, 1961. Subsequent to the adoption thereof CURA acquired title to all of the property in a two and three-quarter block area in downtown Charleston. From time to time, as is permitted by statute, CURA, to provide additional uses to which the property may be devoted, amended the aforesaid plan. The action here on appeal concerns an amendment of the plan by CURA made by a resolution dated February 25, 1964. This amendment added a new paragraph to Part B of the Plan, designated 2 g, and hereinafter referred to as B2g, which reads as follows:

"Outdoor Signs and Advertising.

Advertising, signboards and billboards, poster panels and bulletins shall be permitted, limited to those signboards, billboards, poster panels and bulletins advertising businesses or services conducted on the premises whereupon the signboard or billboard is erected, except that no painted sign shall be permitted, and no roof mounted, or suspended signs shall be permitted; all signs and announcements shall be constructed of three dimensional, wall mounted lettering or words."

It is stipulated by the parties that this resolution incorporating B2g into the plan was not submitted to the Municipal Planning Commission or to the Charleston City Council for approval and was not acted upon by either.

By agreement dated April 24, 1965 CURA agreed to sell to Poole three-quarters of Block 2 of Project R-3, it being designated that such property would be devoted only to the uses specified in the Plan. Pursuant to that agreement, CURA, by deed dated the 19th day of July, 1965, conveyed said tract. Where pertinent to this case the only restriction, covenant and condition provided: "(1) At all times prior to April 1, 1985, the party of the second part shall devote the hereinabove described property to, and only to and in accordance with, the uses specified in the Urban Renewal Plan duly adopted with respect to said property." The deed further provided that such covenant shall be deemed a covenant running with the land and shall be enforceable by CURA, its successors and assigns, the City of Charleston, the United States of America and the owner of any other land in the project area. By deed containing essentially the same covenants, the remaining land in Project R-3 was conveyed by CURA to the Charleston National Bank, the Kanawha Banking and Trust Company and the City of Charleston. By these conveyances CURA divested itself of its title to all the real estate in Project R-3.

In October, 1965, Holiday Inns of America, Inc. agreed by letter to issue a Holiday Inn franchise to Don K. Poole for a motel to be constructed on the urban renewal property formerly acquired by Mr. Poole. CURA was shortly thereafter apprised of this agreement. Mr. Poole then secured a personal loan commitment from the Charleston Federal Savings and Loan Association in the amount of two million, five hundred thousand dollars. This loan was predicated on the borrower obtaining a national franchise with either the Holiday Inns of America, the Sheraton Motor Inns or some other national franchise acceptable to the Association.

In November, 1965, Poole began the construction of a hotel-motel building on its land in the urban renewal area. Said building, now known as the Charleston House, was completed on May 24, 1967. Upon completion of the motel, Holiday Inns of America issued its standard form license agreement to Don K. Poole who assigned it to Poole Associates, Inc. Under this agreement, as well as in the prior letter of commitment, Poole was required to lease from Holiday Inns of America and to erect and maintain upon the premises a standard Holiday Inn sign. As stipulated by the parties, this sign is a well-known motel symbol which appears on more than 1,200 Holiday Inns throughout the nation and is the same type of sign as appears in urban renewal areas in Columbus, Ohio; Detroit, Michigan; Worcester, Massachusetts; Waterbury, Connecticut and Atlanta, Georgia.

Pursuant to its agreement Poole, through Carey Signs, Inc., erected the required sign, the cost thereof being $3,023.32 and signed an agreement to pay Holiday Inns of America a rental of $210.00 a month for said sign. On July 6, 1967, upon application of Poole, the Building Inspector of the City of Charleston issued a building permit to Carey Signs, Inc. for the erection of the subject Holiday Inn sign, the cost for said permit being $128.00. The sign was completed on July 10, 1967.

By letter dated July 21, 1967, CURA notified Poole that it considered the recently constructed Holiday Inn sign to be in violation of its sign restrictions as set out in B2g and requested that the sign be removed. This request being unfulfilled, CURA, on August 1, 1967, instituted this action.

Although the defendant assigns numerous errors on this appeal in support of its quest for a reversal of the judgment of the trial court, the one issue, the resolution of which is dispositive of this case, is whether or not B2g is a valid amendment of the subject urban renewal plan. It is contended by the defendant that B2g, not having been approved by the governing body of the City of Charleston

as required by Code, 1931, 16-18-6, as amended, is not a part of the urban renewal plan and that its provisions, therefore, have no legal force or effect.

Article 18 of Chapter 16 of the Code of West Virginia is the authority for the creation of urban renewal plans and is the statute under which CURA was established. Section 6 of said Article 18 provides for a thorough and detailed review by the governing body of a municipality of any redevelopment plan submitted by an urban renewal authority. Subsection (j) thereof provides for the modification of a redevelopment plan and includes the following language: "Where the proposed modification will substantially change the redevelopment plan as previously approved by the governing body the modification must similarly be approved by the governing body."

As herein noted, the parties have stipulated that B2g was not submitted to or approved by the governing body of the City of Charleston. It was also stipulated that the property located in this urban renewal area is classified as "Business C" and that there has been no violation by the defendant of any zoning laws. The above statute is unquestionably mandatory in requiring the approval by the governing body of any modification which will substantially change the redevelopment plan. B2g constitutes a modification of the plan. Whether or not such modification will "substantially" change the plan is the issue to be resolved.

As reflected by the record CURA recognizes its obligation under the statute to obtain the required approval of any modification of its urban renewal plan. This is demonstrated by its having obtained such approval on several occasions when modifications were proposed and submitted. It was contended by the plaintiffs and found by the trial court that B2g constitutes a use under the urban renewal plan. However, it was also found and held that even though it was a use it did not constitute

a substantial change. It occurs to us that these holdings are inconsistent and that B2g, constituting a use under the deed and provisions of the agreement between CURA and Poole, results in a substantial modification of the plan and therefore should have been submitted for the approval of the governing body under the provisions of Code, 1931, 16-18-6 (j), as amended. Were this not to be considered a substantial change it is difficult to understand why so drastic a measure as to require the removal of the sign was necessary.

Further reflecting the import of B2g and that the modification of the plan by its addition results in a substantial change is the nature of the purported amendment as it pertains to a permitted use. The plan was amended to allow the construction and maintenance of a hotel or motel. CURA had full knowledge of Poole's plan to construct a Holiday Inn or some similar nationally known motel. This is demonstrated by the action of CURA in suggesting to Poole that it obtain a Sheraton franchise if one for a Holiday Inn were not available. That CURA was cognizant of the requirement of a standard sign, whether it be for a Holiday Inn or a Sheraton Motor Inn, is the following language in a stipulation: "The Sheraton Motor Inns franchises require the erection and maintenance of signs identifying the franchised motel operation."

It is readily acknowledged by the parties that the subject sign is a symbol recognized by the travelling public throughout the nation and is a valuable asset of an owner of such franchised motel. Elsewhere in this opinion is set out the extent to which this same type of sign appears, including urban renewal areas in many cities. In the circumstances revealed by the record, to say that the application of B2g, which, according to CURA precludes the maintenance of the subject sign, does not result in a substantial change, is to defy reality. We are of the opinion, therefore, that B2g, if properly adopted, would constitute a substantial change in the

redevelopment plan and that CURA's failure to have the proposed amendment approved as required by Code, 1931, 16-18-6, as amended, causes such proposed amendment to be void and of no legal effect.

See *Merritt v. Village of Portchester*, 71 N.Y. 309; *City of Benton v. Phillips*, 191 Ark. 961, 88 S.W.2d 828; *Smart v. Lloyd*, (Tex.), 370 S.W.2d 245; *North Shore Beach Property Owners Ass'n., Inc. v. Town of Brookhaven, et al.*, 115 N.Y.S.2d 670, 129 N.Y.S.2d 697.

For the reasons stated herein the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded with directions to dissolve the injunction.

Judges Carrigan and Kessel participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Judges Sprouse and Neely did not participate in the consideration or decision of this case.

*Reversed and remanded
with directions.*